UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA M. DI FERDINANDO,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>INTREXON CORPORATION, and DOES 1-100,<br><br>　　　　　　　　　Defendant. | Case No.: 16-cv-01826-BTM-JMA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Defendant Intrexon Corporation ("Defendant") has filed a motion to dismiss Plaintiff Dana M. Di Ferdinando's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons discussed below, Defendant's motion is **GRANTED**.

**I.　　BACKGROUND**

On March 22, 2016, Plaintiff commenced this action in state court.  On July 15, 2016, Defendant removed the action.  Plaintiff asserts the following claims under California law: (1) breach of implied covenant of good faith and fair dealing; (2) common counts; (3) wrongful termination; (4) fraud; and (5) tortious breach of implied covenant of good faith.

According to the Complaint, on October 3, 2013, Defendant offered Plaintiff

employment as Chief Information Officer in its Operations Division.  (Compl. at 4).  Plaintiff accepted the offer and both parties signed an employment agreement which set forth the terms of the employment and compensation. (Compl. Ex. A).   In particular, the employment agreement provides that Plaintiff:

> will be eligible for a stock option grant of 65,000 shares of Intrexon's common stock, which will vest in increments of 25% per year, over a four-year period from the date of grant.  Your grant option is subject to the execution of a Stock Option Agreement by and between you and the Company.

(Compl. Ex. A. at 1).  It further states that:

> [b]y signing this letter below, you acknowledge and agree that your employment with Intrexon is considered 'at will,' meaning it is for an unspecified period of time and that the employment relationship may be ended by you or by the Company at any time, with or without cause.

(Compl. Ex. A. at 2).

Plaintiff began working on November 18, 2013.  (Compl. at 4).  On December 17, 2013, both parties executed a stock option agreement for 65,000 shares—it was made pursuant and subject to the provisions of the 2013 Omnibus Incentive Plan[1] ("option plan")[2].  (Compl. Ex. B at 1).  The stock option agreement detailed several vesting options, including a vesting option in the event that Defendant terminated Plaintiff without cause.  (Compl. Ex. B. ¶ 2(b)(iv)).  It specifically stated that the stock option would "become exercisable in full . . . in the event the Participant's employment with the Company and its Affiliates is terminated by the Company or any Affiliate involuntarily and without

---

[1] While not attached to Plaintiff's pleadings, because Plaintiff's claims are supported by the Stock Option agreement, which in turn is subject to the terms of the Option Plan, and its authenticity is not questioned by either party, the Court may take its contents into consideration.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

[2] Section 21.02 of the Option Plan contains an amendment of awards clause, which states: "[t]he Committee may amend any outstanding Awards to the extent it deems appropriate; provided, however, that no amendment to an outstanding Award may adversely impair the rights of a Participant without the Participant's consent." (Decl. Supp. Def.'s Mot. Dismiss, Ex. 1 at 49).

cause." *Id.* The stock option agreement also included a provision reiterating that there was no right to continued employment.[3] (Compl. Ex. B. ¶ 13).

On March 28, 2014, Defendant presented Plaintiff with a modified stock option agreement which no longer included the provision that allowed for full vesting upon a termination without cause. (Compl. Ex. C). Plaintiff initially refused to sign the modified stock option agreement and complained to the CFO and General Counsel. (Compl. at 5). She was told that she was one of two hold outs and that she had no choice but to sign the modified agreement. *Id.* Plaintiff signed the agreement on March 28, 2014. *Id.*

On July 21, 2015, Defendant terminated Plaintiff's employment without cause. (Compl. at 5).

## II.   DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In deciding a motion to dismiss, a court may consider the facts alleged in the complaint, exhibits attached to the complaint, and documents whose authenticity is not questioned and upon which the plaintiff's complaint necessarily relies on, even if not physically attached to the complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Although detailed factual allegations are not required, factual allegations

---

[3] Paragraph 13 of the Stock Option Agreement states: "Neither the Plan, the granting of this Option nor any other action taken pursuant to the Plan or this Option constitutes or is evidence of any agreement or understanding, expressed or implied, that the Company or any Affiliate shall retain the Participant as an employee for any period of time or at any particular rate of compensation." (Compl. Ex. B. ¶ 13).

"must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 565 U.S. 662, 679 (2009) (internal quotation marks omitted). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

**A.   Wrongful Termination**

Defendant moves to dismiss Plaintiff's third cause of action for wrongful termination on the grounds that her employment was "at-will." (Def.'s Mem. Supp. Mot. Dismiss at 15). To support its argument Defendant points to the employment agreement—which expressly labels the employment at-will—and the stock option agreement—which expressly states that there is no right to continued employment. (*Id.*) Notwithstanding these contractual terms, Plaintiff claims that Defendant wrongfully terminated her employment because it breached both an implied contract and the implied covenant of good faith and fair dealing. (Compl. at 9).

Under California Labor Code § 2922, an employment that has no specified term may be terminated "at the will" of either party. Cal. Lab. Code § 2922. However, an employer does not hold an unfettered right to discharge even an at-will employee. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 665 (1988). California has developed three distinct theories upon which an employee can rebut the presumption of an at-will relationship: (1) a wrongful discharge in violation of public policy; (2) an employer's breach of an implied-in-fact contract

to terminate only for good cause; and (3) an employer's breach of the implied covenant of good faith and fair dealing. *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 475–76 (1984). Here, Plaintiff's wrongful termination claim rests on the second and third theories. The Court addresses each argument below.

### 1. Implied Contract

First, Plaintiff argues that that the modified stock option agreement gave rise to an implied contract that the employment relationship would continue for a minimum of four years—the time it would take for Plaintiff's stock option to fully vest. (Compl. at 8). Plaintiff contends that because the modified stock option agreement eliminated the provision that allowed for full vesting upon a termination without cause, it necessarily created an implied-in-fact contract for continued employment until all of her shares vested. (*Id.*)

In *Foley v. Interactive Data Corporation*, the California Supreme Court held that an implied-in-fact contract can overcome a presumption of at-will employment upon a showing of contrary evidence. *See* 47 Cal.3d at 677. Whether the parties' conduct gave rise to an implied contract is a question of fact. *Id.* The court in *Pugh v. See's Candies, Incorporation,* 116 Cal. App. 3d 311, 327 (1981), identified several factors that may bear on the existence of an implied-in-fact agreement, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." However, where there is an express contract that insists on the employee's at will status, the *Pugh* factors

have no relevance[4].  *See Halvorsen v. Aramark Unif. Servs., Inc.*, 65 Cal. App. 4th 1383, 1388 (1998); *see also Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d at 482.

In *Shapiro v. Wells Fargo Realty Advisors*, the court held that a stock option agreement, that defined an employment relationship as at-will, prevailed over a finding of an implied-in-fact contract.  *See* 152 Cal. App. 3d at 482.  The court distinguished the case from *Pugh*, noting that in *Pugh*, there was no contract which expressly defined the employment relationship.  *Id.*  In *Shapiro*, however, the plaintiff signed a stock option agreement that expressly reserved the defendant's right to discharge the plaintiff at any time for any reason whatsoever, with or without cause.  *Id.*  In light of the agreement, the court held that "[t]here [could not] be a valid express contract and an implied contract, each embracing the same subject, but requiring different results."  *Id.*  Therefore, the plaintiff's allegations of an implied-in-fact contract for continued employment could not rebut his status as an at-will employee.  *Id.*

Here, Plaintiff signed an employment agreement that expressly defined the employment status as at-will.  After starting employment, she also signed two stock option agreements which reiterated that there was no right to continued employment.  If the Court were to find an implied-in-fact contract, its subject matter would be in direct conflict with the written agreements.  Given the express

---

[4] While generally an at-will provision in an express written agreement signed by the employee cannot be overcome by proof of an implied-in-fact contract, this doctrine does not preclude a modification of an express agreement by a subsequent express agreement—written or oral—not to terminate except for good cause. The modification must be supported by new consideration, but an employee's continued service is sufficient consideration for an employer's new promise. *See Halvorsen*, 65 Cal. App. 4th at 1389.  Plaintiff, however, does not allege a modification to the express agreements.

contractual provisions, Plaintiff's claim of an implied contract for continued employment cannot rebut her status as an at-will employee.

Moreover, Plaintiff also claims that, prior to signing the modified stock option agreement, she had a reasonable expectation of continued employment based on Defendant's acts and conduct. (Compl. at 8). However, Plaintiff fails to support such conclusory allegations with facts. She makes no reference to any of the *Pugh* factors, and only generally refers to Defendant's "acts and conduct." (*Id.*) Notwithstanding the lack of factual support, the Court finds that Plaintiff could not have reasonably relied on any implied promise by Defendant which contradicts the provisions contained in both the employment agreement and original stock option agreement. Consequently, Plaintiff's claim for wrongful termination based on a theory of an implied-in-fact contract fails as a matter of law.

### 2. Implied Covenant of Good Faith and Fair Dealing Claim

Alternatively, Plaintiff bases her claim for wrongful termination on the Defendant's alleged breach of the implied covenant of good faith and fair dealing. (Compl. at 9).

The covenant of good faith and fair dealing, implied by law in every contract, "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349 (2000). The implied covenant, however, cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. *Id.* at 349–50. The California Supreme Court has held that breach of the implied covenant cannot logically be based on a claim that the discharge was made without good cause because an at-will employment imposes no such duty. *Id.* Similarly, an employee cannot complain that an arbitrary dismissal deprived her of the benefit

of continued employment because an at-will agreement never provided for such a benefit.  *Id.*

Here, Plaintiff alleges that Defendant's termination of her employment without cause breached the implied covenant because it deprived her of "compensation and continued employment, bonuses, salary, wages, and other benefits she would have received during her employ with Defendants [sic]." (Compl. at 7).  As stated by the California Supreme Court, Plaintiff cannot logically base her claim on the deprivation of continued employment because the at-will status of her employment guarantees no such benefit.  *See Guz*, 24 Cal.4th at 350.  In fact, Plaintiff signed both stock option agreements, which expressly disclaimed any right to continued employment.  Thus, Plaintiff's claim also fails under this theory as a matter of law.

Accordingly, Defendant's motion to dismiss Plaintiff's claim for wrongful termination is **GRANTED.**

**B.     Breach of Implied Covenant of Good Faith and Fair Dealing**

Defendant also moves to dismiss Plaintiff's first claim, an independent cause of action for breach of the implied covenant of good faith and fair dealing. Plaintiff appears to base this claim on two grounds.  First, Plaintiff repeats her argument that Defendant violated the implied covenant by depriving her of the benefit of continued employment.  (Compl. at 5).  As discussed above, the implied covenant cannot impose obligations on contracting parties outside the scope of what they agreed upon.  *See Guz*, 24 Cal.4th at 349–50.  In light of her at-will employment status, Plaintiff's claim for breach of implied covenant regarding the deprivation of continued employment fails.

Second, Plaintiff argues that Defendant breached the implied covenant by presenting her with a modified stock option agreement that deprived her of the ability to exercise her right to the 65,000 shares upon termination without cause.

(Compl. at 5).  The implied covenant of good faith and fair dealing prohibits parties from doing anything that will injure the right of the other to receive the benefits of the agreement.  *Foley v. U.S. Paving Co.*, 262 Cal. App. 2d 499, 505 (1968).  Plaintiff argues that Defendant unlawfully interfered with her contractual rights when it presented her with a modified stock option agreement and: (1) provided no consideration to support the modification; and (2) forced her to sign the modified stock option agreement while under economic duress.  (Compl. at 5).

### *1. Consideration*

With regard to the lack of consideration claim, Defendant argues that there was no need for separate consideration to modify the terms of the stock option agreement because the option plan "expressly provided that the terms of the agreement could be modified, even to the detriment of the employee, upon 'the Participant's consent.'" (Def.'s Mem. Supp. Mot. Dismiss at 7 n.5).  A written contract may expressly provide for its own modification. *Busch v. Globe Industries*, 200 Cal. App. 2d 315, 320 (1962).  Generally, a modification must be supported by additional consideration to be enforceable.  Cal. Civ. Code § 1698.  However, "when a modification is in accordance with a provision of a contract authorizing and setting forth a method for its revision," there is no alteration to begin with.  *Busch*, 200 Cal. App. 2d at 320; *see also Fennie v. E-Fuel Corp.*, No. 5:13-cv-04687-PSG, 2014 WL 1494370, at *3 (N.D. Cal. April 16, 2014) (holding that no consideration was required to modify the maturity date of a promissory note where the note itself contemplated such amendment).  Here, the stock option agreement was subject to the provisions of the option plan—which expressly provides for a modification of the awards.  So as long as the modification of awards was made pursuant to the provision, no separate consideration was required.

Moreover, under California law, the offer of pension plans and stock

options constitutes an offer for a unilateral contract.  *See Newberger v. Rifkind*, 28 Cal. App. 3d 1070, 1076 (1972).  Whether the benefit is offered as an incentive to attract or retain employees, "[c]onsideration is inherent where stock options are granted to employees and the employee continues employment." *Id.* at 1073.  In *Asmus v. Pacific Bell*, 23 Cal.4th 1 (2000), the California Supreme Court addressed this exact issue.  Pacific Bell, the defendant, unilaterally terminated its "Management Employee Security Policy," which was the company's written policy to reassign or retrain its managers instead of laying them off.  *Id.* at 7.  Pacific Bell subsequently formed a new layoff policy, and a group of employees filed suit for breach of contract.  *Id.* at 7–8.  On a certified question from the Ninth Circuit, the California Supreme Court held that Pacific Bell was within its rights when it terminated the policy and replaced it with the new layoff policy because it provided reasonable notice to the affected employees and did not interfere with the employees vested benefits.  *Id.* at 14.  In rejecting the plaintiff's argument that the new policy was unenforceable for lack of consideration, the court held:

> The general rule governing the proper termination of unilateral contracts is that once the promisor determines after a reasonable time that it will terminate or modify the contract, and provides employees with reasonable notice of the change, additional consideration is not required. . . . Just as employers must accept the employee's continued employment as consideration for the original terms, employees must be bound by amendments to those terms, with the availability of continuing employment serving as adequate consideration from the employer.

*Id.* at 14–15.  Here, Defendant decided to modify the stock option agreement three months after presenting Plaintiff with the original agreement.  The modification eliminated the accelerated vesting option that was available upon termination without cause.  It did not interfere with any vested benefits as the modification occurred in March of 2014—nearly eight months before the first

twenty-five percent of the shares became exercisable[5].  Thus, the consideration was the availability of continued employment.

Additionally, Plaintiff consented to the modification by signing the modified stock option agreement and continuing to work for Defendant for another 16 months before being terminated.  *See Asmus*, 23 Cal.4th at 15 ("Continuing to work after the policy termination and subsequent modification constitutes acceptance of the new employment terms.").

As such, Plaintiff's claim fails on the issue of consideration.

### 2. Voluntary Consent

Plaintiff also asserts that Defendant coerced, unduly influenced and pressured her into signing the modified stock option agreement.  (Compl. at 5).  In her opposition to Defendant's motion to dismiss, she clarifies that she was under economic duress when she signed the modified agreement.  (Pl.'s Opp'n at 7).  Plaintiff here fails to state sufficient facts to support a cognizable legal theory.

A plaintiff pleading economic duress bears the burden of showing that the defendant committed a "wrongful act" that is sufficiently coercive "to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure."  *Rich & Whillock, Inc. v. Ashton Development, Inc.*, 157 Cal. App. 3d 1154, 1158 (1984); *see also Osanitsch v. Marconi PLC*, No. CV 05-3988, 2009 WL 5125821, at *5 (N.D. Cal. Dec. 21, 2009) (finding that "the fact that a plaintiff feels economic pressure to sign an agreement does not raise any inferences about a defendant's conduct, much less their wrongful conduct.").  As a threshold matter, "[t]he assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful

---

[5] It is worth noting that what Plaintiff seeks to enforce is a provision allowing for the acceleration of the vesting of stock options; not a provision that directly interferes with already vested benefits.

act for purposes of the economic duress doctrine." *Rich & Whillock, Inc.*, 157 Cal. App. 3d at 1159.

At the outset, Plaintiff fails to state enough facts to demonstrate wrongful conduct. The only facts she alleges to support her claim are that when she refused to sign the modified stock option agreement and complained to the CFO and General Counsel, she was "told that she was one of two hold outs and that she had no choice but to sign" it. (Compl. at 5). The Court does not find that such facts are sufficient to support her claim of economic duress.

Accordingly, Defendant's motion to dismiss Plaintiff's independent claim for breach of implied covenant of good faith and fair dealing is **GRANTED.**

## C. Common Counts Claim

Defendant seeks to dismiss Plaintiff second cause of action—a common count based on the work she rendered during her employment. Under California common law, "[a] common count is not a specific cause of action. . . ; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness[.]" *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). To be entitled to a common count, a plaintiff must show: "(1) indebtedness in a certain sum, (2) the consideration, i.e. goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 460 (1997). However, when a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count fails if the underlying cause of action fails. *See McBride*, 123 Cal. App. 4th at 395; *see also Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 14 (1972).

Here, Plaintiff states in her Complaint that she seeks relief for the services she provided to Defendant "under her employment agreement as set forth in her first cause of action for Breach of Implied Covenant of Good Faith and Fair

Dealing." (Compl. at 6). Her common count claim therefore seeks the same relief and is based on the same facts as the underling breach of implied covenant claim. As discussed above, that claim fails, and as a result, the common count necessarily fails.

Moreover, in her opposition, Plaintiff clarifies that she seeks to recover "severance in an amount that would compensate her for her loss of salary . . . from the date of termination . . . to the time in which the original 65000 shares of stock would have vested," as well as the fair market value of the shares had they completely vested. (Pl.'s Opp. at 14). The count for services is appropriate where the defendant is indebted to the plaintiff in a certain sum for work or labor done or services performed for the defendant. *See Haggerty v. Warner*, 115 Cal. App. 2d 468, 475 (1953). Here, it does not appear that Plaintiff seeks to recover for the work she performed while employed by Defendant, but rather, for what she could have earned had she never been terminated. The basis of her claim is therefore at odds with the purpose of a common law common count.

Therefore, Defendant's motion to dismiss Plaintiff's common counts claim is **GRANTED.**

### D.     Fraud Claim

Defendant also moves to dismiss Plaintiff's fourth claim of fraud, arguing that her allegations are purely conclusory. (Def.'s Mot. To Dismiss, Dkt. 3 at 17).

In order to establish a prima facie case for fraud, a plaintiff must show: (1) a misrepresentation; (2) scienter; (3) intent to defraud; (4) justifiable reliance; and (5) damages. *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). Under the Federal Rules of Civil Procedure, a plaintiff alleging fraud or mistake must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although malice, intent, knowledge, and other conditions of a person's mind may be alleged generally, a plaintiff alleging fraud must still allege facts

from which it can be inferred that the defendant's representations or assurances were false when made. *See, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) (holding that the complaint's factual allegations did not support a plausible inference that the defendants had the required specific intent to defraud). Thus, to satisfy the heightened pleading standard, a plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).

Upon a review of the Complaint, the Court agrees with Defendant and finds that Plaintiff's claim lacks the required specificity. Plaintiff alleges that Defendant "intended to defraud Plaintiff by actively recruiting her and promising employment benefits and stock options that they never intended to honor and made representations of material fact that Plaintiff would rely on to join Defendants [sic] as an employee." (Compl. at 10). However, Plaintiff never elaborates on the content of any particular misrepresentation, where or when it was made, or by whom it was made. Alleging that Defendant never intended to honor the employment or stock option agreement, in absence of any supporting facts, is not enough to satisfy the heightened pleading standard. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Consequently, Defendant's motion to dismiss Plaintiff's fraud claim is **GRANTED**.

### E.     Tortious Breach of Implied Covenant of Good Faith

Lastly, Defendant seeks to dismiss Plaintiff's tortious breach of the implied covenant of good faith claim. Plaintiff urges the Court to apply tort principles in a contract action. (Compl. at 12). Defendant argues that under California law, a

tort claim is not available in an employment context.  (Def.'s Mot. Dismiss at 21).

The remedy for breach of the implied covenant of good faith and fair dealing in a contract has been generally limited to contract damages rather than tort remedies.  *See Foley*, 47 Cal.3d at 693.  California has carved out an exception to this general rule in the context of insurance contracts.  *See id.*  In *Foley v. Interactive Data Corporation*, the California Supreme Court refused to expand this exception and restricted relief to contract damages in employment contract cases.  *Id.*  Plaintiff's action deals solely with an employment contract, and as such, Plaintiff's claim fails as a matter of law.

Moreover, Plaintiff argues in her opposition that because Defendant acted intentionally, maliciously, and fraudulently in terminating her employment, tort damages are warranted.  Even assuming *arguendo* that Defendant acted with malice, she is nevertheless limited to contract damages.  *See Foley*, 47 Cal.3d at 699 ("[i]n traditional contract law, the *motive* of the breaching party generally has no bearing on the scope of damages that the injured party may recover for the breach of the implied covenant; the remedies are limited to contract damages.").

Accordingly, Defendant's motion to dismiss Plaintiff's fifth claim for tortious breach of the implied covenant is **GRANTED**.

//
//
//
//
//
//
//
//
//
//

### III.    CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is **GRANTED**.  Plaintiff's Complaint is **DISMISSED** in its entirety.  The Court grants Plaintiff leave to file an amended complaint with respect to her first and fourth causes of action.  If Plaintiff chooses to do so, the amended complaint must be filed within 30 days of the entry of this Order.  Failure to do so will result in the entry of a final judgment of dismissal.

**IT IS SO ORDERED.**

Dated: November 28, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

16

16-cv-01826-BTM-JMA