# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA DI FERDINANDO,<br><br>         Plaintiff,<br><br>v.<br><br>INTREXON CORPORATION,<br><br>         Defendant. | Case No.: 16-CV-1826 W (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [DOC. 12]** |

  Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 12.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **DENIES** Defendant's motion.

//
//
//
//
//
//
//
//

1

# I. BACKGROUND

The First Amended Complaint ("FAC") alleges the following facts. (*FAC* [Doc. 11].)

Defendant Intrexon hired Plaintiff Dana Di Ferdinando on or about November 18, 2013 as its Chief Information Officer. (*FAC* [Doc. 11] 3:10–13.)[1] Part of Di Ferdinando's compensation included stock options, which would all vest immediately if she were to be terminated "involuntarily and without cause." (*Original Stock Option Agreement* [Doc. 11-1, Exh. B] § 2(b)(iv).)

On March 28, 2014, an Intrexon Benefits Administrator sent Di Ferdinando another stock options agreement, along with a letter representing to her the following:

> **In reviewing our internal files, we found that a number of stock options were inadvertently issued using an incorrect form of agreement. Attached is a replacement agreement for your previous stock option grant. Both the effective date and strike price remain unchanged.**

(*FAC* [Doc. 11] 5:1–6:7; *Epperly-Gilbert Letter* [Doc. 11-1, Exh. E].)

The new, replacement stock options agreement was identical to the original, except that it omitted language causing Di Ferdinando's options to vest immediately in the event she were to be terminated without cause. (*See FAC* [Doc. 11] 5:2–7; *Amended Stock Option Agreement* [Doc. 11-1, Exh. D].) The amended agreement is dated the March 28, 2014—the same day Intrexon's benefits administrator messaged Di Ferdinando about the new agreement—representing to her that the reason for the change was that the original had been "inadvertently issued using an incorrect form of agreement." (*See Epperly-Gilbert Letter* [Doc. 11-1, Exh. E].) The FAC alleges that Intrexon representatives misconstrued the amendment as "ministerial" or "administrative[,]" and that they used "all manner of coercive tactics to extract her signature on the modification within just a

---

[1] The FAC lacks paragraph numbering.

few hour[s] of when it was presented, without allowing Plaintiff the benefit of review, consideration[,] analysis[,] or to seek out legal advice." (*See FAC* [Doc. 11] 5:13–24.)

Plaintiff was terminated from her position at Intrexon the following year—on July 21, 2015. (*FAC* [Doc. 11] 9:7–9.) She filed this action on March 22, 2016. (*Compl.* [Doc. 1, Exh. A].) The FAC alleges two causes of action: (1) breach of the implied covenant of good faith and fair dealing; and (2) fraud. (*FAC* [Doc. 11].)

Defendant now moves to dismiss the FAC.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted

deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286, (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (as amended).

### B. Fraud Pleading and Fed. R. Civ. P. 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). A plaintiff must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud together with an explanation of the statement and why it was false or misleading. See id. at 1107.

Fraud pleading must be sufficient to give defendants notice of the circumstances surrounding an allegedly fraudulent statement. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994) (superseded by statute on other grounds as stated in Ronconi v. Larkin, 253 F.3d 423, 428–29 (9th Cir. 2001)). Those circumstances must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess, 317 F.3d at 1106 (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotation omitted). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

## III. DISCUSSION

### A. Fraud

"One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code §

4

1709. "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 696, p. 778).

In seeking the dismiss the fraud cause of action, Defendant makes two arguments in tandem.

First, it contends that Di Ferdinando has alleged no damages as a result of the alleged fraud. (*Def.'s Mot.* [Doc. 12-1] 11:2–15:23.) This is not correct. The FAC explicitly alleges damages in the form of unvested options that would have vested upon Di Ferdinando's termination, had she not relied on Intrexon's misrepresentations and entered into the amended agreement in March of 2014. (*See FAC* [Doc. 11] 17:16–24.)

Second, Intrexon contends that Plaintiff could not have been misled because "[t]he purpose behind the amendment was obvious[,]" or alternatively that "she knew what she was giving up." (*Def.'s Mot.* [Doc. 12-1] 11:2–15:23.) Defendant is attacking the fourth element of a California fraud claim—justifiable reliance—essentially contending that Di Ferdinando could not have justifiably relied on its alleged misrepresentations or concealment while she was in possession of the written amended agreement, which omitted the accelerated vesting clause from the first options agreement. See Lazar, 12 Cal. 4th at 638.

" 'It is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing [the plaintiff's] conduct . . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing [her] decision.' " OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 864 (2007) (quoting Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 976–77 (1997)) (internal citation omitted). "Regarding concealment claims, the plaintiff may establish this element by showing that 'had the omitted information been disclosed, [he or she]

5

would have been aware of it and behaved differently." Id. (quoting Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993)). "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience . . . . 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.'" Id. (quoting Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995)).

The FAC alleges that Di Ferdinando relied on the following: (1) Defendant's affirmative misrepresentations that the amendment to her options agreement was ministerial or administrative in nature; and (2) Defendant's concealing from Di Ferdinando the true purpose of the amendment. (*See FAC* [Doc. 11] 5:1–6:15; 16:14–17:21; *Epperly-Gilbert Letter* [Doc. 11-1, Exh. E].)

Intrexon intimates that Plaintiff knew of the amendment's purpose, and thus could not have relied on Intrexon's alleged misrepresentations and concealment. (*See Def.'s Mot.* [Doc. 12-1] 14:25–15:23 ("Plaintiff's damages are that she lost her unvested options when she was terminated. This was precisely what she complained of when presented with the amendment and Plaintiff cannot now complain that she was defrauded[;]" "[S]he knew what she was giving up[—]the right to accelerated vesting upon termination.")

The FAC alleges that "at no time did [Di Ferdinando ever voluntarily acquiesce nor give her consent to the modified stock option agreement[,] and based on the fraud and deceit by defendant as alleged in [the FAC,] there was never a meeting of the minds between the parties . . . ." (*FAC* [Doc. 11] 13:18–22.) It further alleges that "[h]ad Plaintiff been apprised and/or aware of the true facts behind the demand for the signing of the modified stock option agreement, Plaintiff would have never signed it." (*Id.* [Doc. 11] 17:16–21.) As noted above, in ruling on a 12(b)(6) motion, the Court "accept[s] all material allegations of fact as true and construe[s] the complaint in a light most favorable to the non-moving party." Vasquez, 487 F.3d at 1249.

The FAC alleges sufficient facts to make out a plausible claim that Defendant's alleged misrepresentations and concealment "played a substantial part, and so [were] a

substantial factor, in influencing [Di Ferdinando's] decision" to agree to the terms of the amended options agreement. See OCM Principal Opportunities Fund, 157 Cal. App. 4th at 864 (internal quotation omitted). As to whether Di Ferdinando's reliance was justified, the circumstances alleged are sufficient to support a plausible claim. See id.; Iqbal, 556 U.S. at 678.

Defendant's motion to dismiss Plaintiff's fraud cause of action will be denied.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683 (1988) (quoting Restatement (Second) of Contracts § 205 (1981)). A " 'breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself' and it has been held that '[b]ad faith implies unfair dealing rather than mistaken judgment . . . .' " Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (1990), as modified on denial of reh'g (Oct. 31, 2001) (quoting Congleton v. National Union Fire Ins. Co., 189 Cal. App. 3d 51, 59 (1987)) (internal quotations omitted).

> **Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.**

Id. at 1395. "[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992), reh'g denied and opinion modified (Jan. 6, 1993), as modified on denial of reh'g (Mar. 25, 1993).

Intrexon contends that the 2013 Omnibus Incentive Plan, page 40 of which is attached to the FAC as Exhibit C,[2] explicitly allowed for the amendment of Di Ferdinando's options agreement with her consent. (*See Def.'s Mot.* [Doc. 12-1] 16:20–18:17; *FAC* [Doc. 11] 4:8–26; *Intrexon Omnibus Incentive Plan* [Doc. 11, Exh. C] § 21.01.) Di Ferdinando's original and amended options agreements both incorporated the terms of the 2013 Omnibus Incentive Plan. (*Original Stock Option Agreement* [Doc. 11-1, Exh. B] 1; *Amended Stock Option Agreement* [Doc. 11-1, Exh. D].) Intrexon further contends that Di Ferdinando consented to the amendment of the options agreement when she signed it. (*See Def.'s Mot.* [Doc. 12-1] 17:25–27.) Thus, per Intrexon's reasoning, Di Ferdinando may not maintain her breach of implied covenant of good faith and fair dealing cause of action based on the amendment because this amendment was within the terms of the 2013 Omnibus Incentive Plan, and by proxy, the original agreement. (*See id.*)

Di Ferdinando, on the other hand, contends that her consent was not valid because of economic duress. (*See Pl.'s Opp'n* [Doc. 15] 9:10–22 ("[Plaintiff] had no choice but to sign [the amended agreement] in order to maintain her employment and support her family.").)

"[California] law recognizes the concept of economic duress as a basis for vitiating a coerced party's consent to an agreement." Tarpy v. Cty. of San Diego, 110 Cal. App. 4th 267, 277 (2003) "Economic duress does not necessarily involve an unlawful act, but may arise from an act that is so coercive as to 'cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract.' " Id. (quoting CrossTalk Productions, Inc., 65 Cal. App. 4th 631, 644 (1998)). "[T]he doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the

---

[2] Plaintiff also incorporates the plan in its entirety by reference, which is attached to the Declaration of Donald Lehr. (*FAC* [Doc. 11] 4:8–17; *Omnibus Incentive Plan* [Doc. 3-2, Exh. 1].)

perpetrator's pressure." Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154, 1158 (1984). "The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine[,]" as "a reasonably prudent person subject to such act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." Id. at 1159.

"The underlying concern of the economic duress doctrine is the enforcement in the marketplace of certain minimal standards of business ethics. Hard bargaining, 'efficient' breaches and reasonable settlements of good faith disputes are all acceptable, even desirable, in our economic system." Rich, 157 Cal. App. 3d at 1159.

> **That system can be viewed as a game in which everybody wins, to one degree or another, so long as everyone plays by the common rules. Those rules are not limited to precepts of rationality and self-interest. They include equitable notions of fairness and propriety which preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value. Such exchanges make a mockery of freedom of contract and undermine the proper functioning of our economic system. The economic duress doctrine serves as a last resort to correct these aberrations when conventional alternatives and remedies are unavailing.**

Id.

"When a party pleads economic duress, that party must have had no 'reasonable alternative' to the action it now seeks to avoid (generally, agreeing to a contract). If a reasonable alternative was available, and there hence was no compelling necessity to submit to the coercive demands, economic duress cannot be established." CrossTalk Prods., 65 Cal. App. 4th at 644. "Clearly this inquiry is a factual one, rarely if ever susceptible to determination on demurrer."[3] Id.

Di Ferdinando pleads economic duress in the FAC, without using the phrase itself.[4]

---

[3] A demurrer is the California court system's procedural analogue to a 12(b)(6) motion in federal court. See Cal. Code Civ. Proc. § 430.10.

[4] Defendant does not raise the issue of lack of notice in its motion. (*Def.'s Mot.* [Doc. 12-1].)

9

(*FAC* [Doc. 11] 13:9–17.) Given her position with Intrexon at the time, a refusal to sign the amended agreement may have had adverse employment consequences.[5] (*See FAC* [Doc. 11] 9:10–10:22; *Pl.'s Opp'n* [Doc. 15] 9:15–22.) Unlike the initial form complaint, the FAC alleges the circumstances surrounding the modification in detail. (*See FAC* [Doc. 11] 5:1–8:8; 9:22–27.) Whether Di Ferdinando had a reasonable alternative to signing is a question of fact. CrossTalk Prods., 65 Cal. App. 4th at 644. Given the circumstances alleged, accepted as true and construed in the light most favorable to the nonmoving party, Vasquez, 487 F.3d at 1249, the allegations of economic duress "rise above the speculative level." Twombly, 550 U.S. at 555.

Intrexon contends that Judge Moskowitz previously "found that [Di Ferdinando] voluntarily consented to the 2014 Stock Option Agreement." (*Def.'s Mot.* [Doc. 12-1] 18:20–21 (citing *Nov. 28, 2016 Order* [Doc. 10] 11–12).) The Court's prior order contained no such finding. Rather, it found that Plaintiff's initial complaint contained insufficient facts to support a theory of economic duress:

> **At the outset, Plaintiff fails to state enough facts to demonstrate wrongful conduct. The only facts she alleges to support her claim are that when she refused to sign the modified stock option agreement and complained to the CFO and General Counsel, she was "told that she was one of two hold outs and that she had no choice but to sign it" (citing to *Compl.* [Doc. 1, Exh. A] 5). The Court does not find that such facts are sufficient to support her claim of economic duress.**

(*Nov. 28, 2016 Order* [Doc. 10] 12:3–8.) The prior order also stated that "Plaintiff consented to the modification by signing the modified stock option agreement and continuing to work for Defendant for another 16 months before being terminated." (*See Nov. 28, 2016 Order* [Doc. 10] 11:3–4.) However, this discussion did not pertain to the voluntariness of the consent, but to the issue of consideration. Given that the Court

---

[5] "Defendant Intrexon . . . clearly was aware and knew that if Plaintiff chose to quit or submit her own resignation that she would not have the right, power nor the ability to . . . collect under the first stock option agreement." (*Pl.'s Opp'n* [Doc. 15] 9:22–25.)

allowed Plaintiff leave to amend the cause of action, the foregoing language does not preclude Plaintiff from pursuing a theory of economic duress.

Defendant's motion to dismiss Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing will be denied.

### IV. CONCLUSION & ORDER

Defendant's motion to dismiss is **DENIED**. [Doc. 12.]

**IT IS SO ORDERED.**

Dated: August 24, 2017

Hon. Thomas J. Whelan
United States District Judge